THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| COLVIN, TRUSTEE, BRICKLAYERS UNION LOCAL NO. 6 OF INDIANA PENSION FUND, et al., ) ) ) ) Plaintiffs, ) ) v. ) CAUSE NO.: 2:10-CV-210-APR ) UNITED FLOORING, INC. and ) STEVE KLINGER, ) ) Defendants. ) | |

*OPINION AND ORDER*

This matter is before the court on the Motion for Summary Judgment [DE 41] filed by the defendants, United Flooring, Inc. and Steven Klinger, on September 30, 2013, the Motion for Summary Judgment Against Defendant United Flooring Inc. Only [DE 43] filed by the plaintiffs on September 30, 2013, and the Motion to Strike Plaintiffs' Untimely Response [DE 50] filed by the defendants on November 18, 2013.  For the following reasons, the Motion for Summary Judgment [DE 41] is **DENIED**, the Motion for Summary Judgment Against Defendant United Flooring Inc. Only [DE 43] is **GRANTED IN PART AND DENIED IN PART**, and the Motion to Strike Plaintiffs' Untimely Response [DE 50] is **DENIED.**  The court **SETS** the discovery deadline for May 30, 2014.

*Background*

The defendant, Steve Klinger, signed an agreement on behalf of United Flooring, Inc. with the International Union of Bricklayers & Allied Craftworks Local 4 of Indiana and

1

Kentucky, which became effective November 21, 2000. The defendants were required to make contributions to the plaintiff pension fund on behalf of its employees. The agreement permitted the plaintiffs' designee to perform payroll and related record audits to determine if the company's monthly reporting forms correctly reflected the amount of fringe benefit contributions and deductions which were owed for the reported month and if the actual payments were correct.

The plaintiffs sent a letter dated April 29, 2005, informing United Flooring that it would be subjected to a random audit for the period of January 1, 2002 through December 31, 2004. The plaintiffs generally conducted audits of its contractors on a three year schedule. The audit revealed that United Flooring owed contributions. The plaintiffs' attorney sent a letter to United Flooring on March 12, 2009, demanding payment of $20,065.26 for unpaid contributions incurred prior to November 2003. The defendants' attorney responded that he believed the statute of limitations had run on the money owed from 2002-2004. The defendants did not pay, and the plaintiffs filed the instant lawsuit on May 25, 2010, raising five counts against the defendants. The parties filed the instant motions on whether the statute of limitations has run.

*Discussion*

The court first will address the defendants' motion to strike the plaintiffs' response to their motion for summary judgment as untimely. The plaintiffs' response was due on or before October 31, 2013. The CM/ECF Manual states that a document must be submitted by 11:59 EST on the date that it is due regardless of the local time of the party or the location of the court. The plaintiffs filed their response on November 1, 2013 at 12:37 a.m. EST. However, the plaintiffs and the court are located in the central time zone, and the response would have been

timely filed if Central Standard Time applied. Although the plaintiffs' response was untimely, the court finds that the plaintiffs' confusion regarding the time zones is excusable neglect. The plaintiffs' response only was 38 minutes late, and this delay could not have prejudiced the defendants. In the interests of justice, the court **DENIES** the defendants' motion to strike and will address the parties' motions on their merits.

In their response to the defendants' motion for summary judgment, the plaintiffs agreed to dismiss Counts II-V. Therefore, the only remaining issue is Count I, which alleges that the defendants failed to pay contributions to the fund between January 1, 2002 and November 2003. The parties dispute the applicable statute of limitations and whether this claim is time barred. The defendants first argue that the court should apply the statute of limitations from ERISA § 1451 to this matter because the plaintiffs' claim raises issues under other ERISA provisions. The defendants refer the court to a concurring opinion prepared by Judge Frank Easterbrook, which suggested that the statute of limitations found in § 1451 should be applied. *Teamsters v. Gorman Brothers Ready Mix*, 283 F.3d 877, 887 (7th Cir. 2002) (Easterbrook, J., concurring). Judge Easterbrook argued that the Supreme Court had borrowed the statute of limitations from other similar federal acts instead of resorting to the similar state statute of limitations under some circumstances and that ERISA's sweeping preemption clause made doing so appropriate. *Gorman*, 283 F.3d at 887-888. However, later Seventh Circuit decisions addressing this same issue chose to apply the statute of limitations of the similar state action. *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 816 (7th Cir. 2010) (citing *Leister v. Dovetail, Inc*., 546 F.3d 875, 880-881 (7th Cir. 2008); *Berger v. AXA Network LLC*, 459 F.3d 804, 808 (7th Cir. 2006); *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996)).

*See also* **Jenkins v. Local 705 Intern. Broth. of Teamsters Pension Plan**, 713 F.2d 247 (7th Cir. 1983) (explaining that the Illinois statute of limitations for written contracts applied when funds sought delinquent employer contributions).

The court sees no reason to vary from the Seventh Circuit's precedent. Although the later cases did not directly discuss and dispute Judge Easterbrook's concurring opinion, the opinions explicitly applied the state statute of limitations, and the court will do the same in this matter. Here, the applicable statute of limitations would be Indiana's six year statute of limitations for contract disputes.

The parties further dispute when the statute of limitations began to run. The defendants argue that more than six years elapsed between the time they failed to contribute the appropriate amount to the fund and the plaintiffs filed the current lawsuit, and for this reason their claims are time barred. The plaintiffs counter that the statue of limitations began to run at the time they discovered the error.

Interestingly, both parties rely on **Bay Area Laundry and Dry Cleaning Pension Fund v. Ferbar Corporation of California, Inc**., 522 U.S. 192, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). In this case, the employer withdrew from the pension fund and incurred withdrawal liability. The Supreme Court explained that the statute of limitations was not triggered until the date on which the plaintiff could file suit and obtain relief and that, in this case, two events must occur to trigger the statute of limitations period. **Ferbar**, 522 U.S. at 203, 118 S.Ct. at 549. First, the trustee had to calculate the debt and set a schedule, and second the employer had to default. **Ferbar**, 522 U.S. at 203, 118 S.Ct. at 549. The Supreme Court explained that the statute made clear that the withdrawing employer did not owe anything until the plan made a demand for

withdrawal liability. *Ferbar*, 522 U.S. at 203, 118 S.Ct. at 549. This was because, absent a demand, the employer could not determine or pay the amount of the withdrawal liability debt until the plan calculated the amount. *Ferbar*, 522 U.S. at 203, 118 S.Ct. at 549.

The plaintiffs rely on the portion of *Ferbar* which states that the statute of limitations does not begin to run until the pension plan determines the amount owed and demands payment. However, this case does not concern withdrawal liability. In *Ferbar*, the employer did not know how much it owed until the trustee calculated the amount due and sent a demand. The employer was not in default until it missed one of the payments scheduled by the trustee, and it was at this point the plaintiffs could seek damages. Here, that is not the case. The defendants had an ongoing obligation to make certain contributions to the fund. The amount was predetermined by the parties' agreement, and the defendants were aware of the ongoing obligation. Therefore, the plaintiffs first could have sought damages at the time the employer failed to pay the correct amount if it was aware of the shortcoming.

The defendants disagree that the fund's awareness of the shortcoming, rather than the insufficient payment itself, triggered the statute of limitations. In a similar case, the Ninth Circuit stated that the statute of limitations did not begin to run until the trust fund had reason to know of the underpayment. In *Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371 (9th Cir. 1990), the employer discovered a mistake in the way vacation hours were computed in 1984, and although it began to report the hours per month correctly following its discovery, it did not inform the trust fund that earlier reporting had been erroneous. In 1986, the trust fund conducted an audit for the period of January 1, 1982 through December 31, 1985, and discovered the error. The trust fund filed its

complaint in 1988 to recover the damages. Because California had a four year statute of limitations, the defendants argued that the plaintiffs' action was time barred. The Ninth Circuit rejected this argument, explaining that the statute of limitations began to run when the plaintiff knew or had reason to know of the injury that was the basis of the action. *Jumbo Markets*, 906 F.2d at. 1372. The court noted that the employer had a fiduciary obligation and by keeping the error secret, it failed to observe its duty. For this reason, the court determined the statute of limitations did not begin to run until the trust fund had reason to know of the underpayment at the time of its audit. *Jumbo Markets*, 906 F.2d at 1373. The court did not believe that the trust had a duty to make an independent verification that the correct amount was being paid prior to its audit because the facts known to it did not give it reason to know of the error. *Jumbo Markets*, 906 F.2d at 1373. The matter was remanded to the district court to determine when the trust fund had reason to know of the underpayment.

Another district court within the Seventh Circuit previously addressed a case where the employer failed to make contributions to the pension plan because it did not designate its employees by the proper terms. *Central States Southeast and Southwest Areas Pension Fund v. Kroger Co.*, 2004 WL 2452737, *1 (N.D. Ill. Nov. 1, 2004). Under the CBA, the employer was to make pension contributions for employees designated as probationary, which was defined as employees who would work for a thirty day trial period before being added to the regular employee list. *Kroger,* 2004 WL 2452737 at *1. The CBA did not require the employer to make contributions for casual employees who were hired on a short-term basis. *Kroger,* 2004 WL 2452737 at *1. During its 1991 audit, the fund determined that the employer had designated numerous employees as casual who should have been classified as probationary, and therefore

6

did not make the appropriate contributions. *Kroger,* 2004 WL 2452737 at *2. The employer raised the statute of limitations as a defense, arguing that it had sent reports to the fund for years and that the reports should have put the fund on notice that it was not paying the proper amount triggering the statute of limitations at an earlier time. *Kroger,* 2004 WL 2452737 at *7. The court rejected this argument, explaining that the reports did not contain the date of hire for the employees who were later added to the employee's list and therefore could not have served to put the fund on notice. *Kroger,* 2004 WL 2452737 at *7. Even though the employer may have provided "vague, hidden clues regarding starting dates", the court determined that it was reasonable for the fund to rely on the employer's reporting and calculations and that the fund was not put on notice until its 1991 audit. *Kroger,* 2004 WL 2452737 at *12. Because the evidence failed to establish that the fund unreasonably delayed its audit or that the employer relied on the fund's inaction, the court further determined that the fund's claim was not barred by the doctrine of laches. *Kroger,* 2004 WL 2452737 at *12.

The plaintiffs seek damages for the defendants' failure to contribute to the plan from early 2002 until November 2003. However, the plaintiffs did not file their complaint until May 24, 2010, more than six years after the defendants' last failure to make the appropriate contribution. The question left for the court to resolve is when the fund should have become aware of the defendants' failure to make the appropriate contributions. The record is devoid of any indication that the defendants submitted information that would have put the fund on notice of the deficits in its contributions prior to the plaintiffs' audit. Although the defendants submitted monthly reports, the record does not make it clear, nor do the defendants argue, that the reports contained all of the information necessary to identify the shortcomings. Moreover,

the defendants have not explained why the fund should have been on notice at an earlier time. Rather, the defendants' argument appears to be that the fund should have conducted its audit prior to 2005.  However, the defendants have submitted no authority to show that the statute of limitations begins to run at the time of the final actionable doing, rather than when the fund becomes aware of the breach.  Even if the fund was aware of the shortcomings as early as it initiated its audit in April 2005, rather than when it was concluded in 2009, it did not gain knowledge of the deficit until a time within the statute of limitations.

This is not to say that a trust fund can remain oblivious to the miscalculations and bring a lawsuit at any time it is discovered.  Rather, the cases suggest that the doctrine of laches would prevent such injustice if the defendant can show that the delay was unreasonable and resulted in prejudice.  *Kroger*, 2004 WL 2452737 at *12.  However, the defendants have failed to show both that the fund unreasonably delayed its audit or that it was prejudiced by the lapse in time. Because the fund had no reason to know that the defendants were not making the appropriate contributions prior its audit and the defendants did not submit any evidence to show that the fund unreasonably delayed its audit, the court finds that the statute of limitations did not begin to run until the plaintiffs' audit was conducted and that this action was brought within the statute of limitations.

Although the court agrees that the statute of limitations has not run on the plaintiffs' claim, the court had directed the parties to brief the issue of the statute of limitations only.  The defendants argue that discovery has not been completed and that they intend to challenge the merits of the plaintiffs' claim.  For this reason, the court will withhold entering judgment.

Based on the foregoing reasons, the Motion for Summary Judgment [DE 41] is **DENIED**,

the Motion for Summary Judgment Against Defendant United Flooring Inc. Only [DE 43] is

**GRANTED IN PART AND DENIED IN PART**, and the Motion to Strike Plaintiffs' Untimely

Response [DE 50] is **DENIED.**  The court **SETS** the discovery deadline for May 30, 2014.

ENTERED this 15th day of January, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge